THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* IRA C. MUMMERT, Appellant.

County Court, Nassau County, July 26, 1944.

*Richard H. Brown* for appellant.

*Edward J. Neary, District Attorney* (*Philip Huntington* of counsel), for respondent.

COLLINS, J.  The defendant has been convicted of the crime of assault in the third degree upon an information that he willfully, wrongfully and unlawfully violated the Penal Law (§ 244, subd. 1) by beating one Lester Hankinson, Jr., of the age of ten years upon his buttocks with a stick without just cause or provocation.

In order to convict a defendant of criminal assault it is of course incumbent upon the prosecution to prove beyond a reasonable doubt the commission by him of a willful and intentional assault.

In this case, the defendant is the principal of the school wherein the child in question was a pupil, and concededly the child was punished in the principal's office in the presence or view of a teacher who testified at the trial, and of the principal's secretary who was unable to testify at the trial because of illness.  The punishment was admittedly imposed by placing the boy upon a chair in such a position as to enable the principal to strike his buttocks with a stick, which was apparently a ruler or piece of yardstick or something similar.

The defendant as principal of the school therefore, insofar as inflicting punishment upon this boy is concerned, stood in the same position as would the parent of the boy if such parent were inflicting punishment upon the boy for misbehavior at home.  The statute makes no distinction between the two positions, namely, that of teacher and that of parent.  It provides that either may in the exercise of lawful authority correct the child if the force or violence used in so doing is reasonable in manner and moderate in degree.  (Penal Law, § 246, subd. 4.)

At the outset it should not be overlooked that this statute does not constitute a defense in the sense of matter which must be proven by the defendant.  To be sure it is spoken of as a defense as is self-defense or insanity.  Nevertheless, in no case does there rest upon the defendant the burden of establishing such so-called defense, as in any criminal case the defendant must be presumed innocent, and the burden of proving his guilt beyond a reasonable doubt rests upon the People throughout the case and never shifts.

Consequently, to sustain this conviction the court must be satisfied by the evidence beyond a reasonable doubt that the defendant assaulted the boy willfully and intentionally, and that such assault was not committed by him in the exercise of lawful authority to correct the child and that the force or violence used was not reasonable in manner and was not moderate in degree.

An examination of the record is necessary to determine whether or not the evidence sustains that conclusion.

That the defendant struck the boy on the buttocks with a ruler or piece of yardstick several times is conceded. So too, it is not disputed that the defendant was purporting to act as principal or teacher in the exercise of lawful authority to correct the child for some infraction of discipline; nor does it appear to be disputed that one infraction of discipline consisted of the boy's throwing or dropping a book deliberately from the balcony of the auditorium to the seats below. It appears to be the contention of the prosecution that this particular infraction was the only matter which the defendant could rightfully consider in determining what punishment should be imposed and the severity thereof; and that the punishment which he did impose was severe out of all proportion to that particular infraction. Indeed, the trial court in reaching its determination as to the defendant's guilt said specifically that the only question which it was called upon to decide was whether the force applied by the defendant to the boy was reasonable in manner and moderate in degree. Nevertheless, that court refused to permit the introduction in evidence by the defendant of other alleged acts of misconduct by the boy and of reports to him by the boy's teachers of other alleged misbehavior.

In determining what, if any, punishment should be imposed upon the boy, the defendant was called upon to exercise reasonable judgment. It seems obvious that in so doing he could not and should not be confined to one particular instance of misconduct. Where a single isolated instance of misconduct is involved it might well be that corporal punishment of any sort would be uncalled for. To determine whether such punishment should be imposed for the correction of the child and the preservation of discipline in the school, it seems obvious that it was necessary for the principal in reaching his determination to consider the boy's conduct generally and the acts of the boy not only in the schoolhouse or upon the school premises but in connection with other pupils even though off the school premises. He stands exactly in the same position in that respect as would the parent of the child had such parent been called

upon to correct the child for some misbehavior at home. Surely in such case it would be proper for the parent to consider the child's general behavior in determining the nature of the punishment for the particular infraction. The same principles are applied by a court in sentencing a defendant who has been convicted of an infraction of the law. In deciding what punishment shall be imposed the court necessarily investigates the prior conduct of the defendant to determine whether the infraction of which he has been convicted is an isolated case or whether his other activities have been such as to require a more severe punishment.

So too, the defendant, as principal of the school, should have been permitted to put in evidence reports to him by the boy's teachers of other infractions or misbehavior of the boy. The principal, himself, is not in direct contact with the child and has the right to rely upon the reports made to him by the teachers of the child for the purpose of determining what measures of correction should be taken. When the defendant was not permitted to adduce such evidence, he was in effect deprived of his right to show the evidence upon which he acted in arriving at his determination that the boy should suffer corporal punishment.

It does appear from the evidence, however, that one of the considerations moving the defendant to his determination to punish the boy corporally concerned the behavior of the boy in inflicting corporal injury upon other pupils of the school. In determining what is a reasonable punishment; the defendant must necessarily have regarded various considerations, and whether after such consideration he exercised reasonable judgment in determining what the punishment should be is often a difficult question. Among reasonable persons difference prevails as to the circumstances which will justify corporal punishment and the extent to which such punishment may properly be administered. Because of that difficulty and the advantage which a teacher or principal has by being present at the school and having before him the circumstances, a considerable allowance should be made to him by way of protecting him in the exercise of his discretion particularly where it does not appear that he acted from malice or anger. (*Lander* v. *Seaver*, 32 Vt. 114, cited in *People* v. *Petrie*, 120 Misc. 221.) It may not be said upon this record that the People established beyond a reasonable doubt either that the defendant acted from anger or malice or that he was unreasonable in determining that corporal punishment should be inflicted.

The sole question, therefore, is whether the corporal punishment inflicted was unreasonable in manner and immoderate in degree. It does not seem to this court that it may be said to be unreasonable in manner; on the contrary, it has been a quite usual method of inflicting corporal punishment either by parent or teacher, that is, the spanking of the child by the use of a stick similar to a ruler or piece of yardstick. It remains then to determine whether the punishment was immoderate in degree. On that point to be sure, there was some conflict in the evidence; mainly, however, with respect to the number of times the defendant struck the boy. In that respect, the testimony of the physicians is important. A day or two after the occurrence the boy was examined both by the school physician and by a physician called by the boy's parents. The school physician testified that he found a " black and blue mark " on the boy's right buttock. Upon cross-examination he said that the left buttock did not appear to be swollen. The physician called by the boy's parents being absent, his written statement was received in evidence in which he said that his examination of the boy showed " a few areas of ecchymosis of both buttocks; left buttock appears swollen ". Ecchymosis is the technical medical term used by physicians where the layman would ordinarily say " bruise " or " black and blue mark ". Both doctors, therefore, agreed that there were bruises or black and blue marks upon the boy's buttocks. The only difference between the two is that one said that the left buttock appeared to be swollen and the other said that it did not.

Considered with the testimony of the boy and his mother, it may be assumed, therefore, that the boy's buttocks were red and sore the first day and thereafter were black and blue. This would be the natural result of the administration of blows to those buttocks by means of a rod such as a ruler or yardstick

If this defendant's license to teach were involved, it should not be annulled on a charge of this sort unless the evidence adduced were conclusive that the corporal punishment inflicted was both unreasonable in manner and immoderate in degree. (*Matter of Osgood*, 62 N. Y. St. Dept. Rep. 172.)

To be sure in such a case as this it is not required of the People that they produce " conclusive " proof. It is required, however, that they produce proof sufficient to satisfy beyond a reasonable doubt that the punishment inflicted was unreasonable in manner and was immoderate in degree. I cannot find that that burden has been sustained by the People from the evidence presented in this case.

The provisions of the statute of this State contemplate corporal punishment reasonable in manner and moderate in degree in the discipline of children. Perhaps these provisions are a recognition of the admonitions to parents contained in the Book of Proverbs of the Holy Bible which have been paraphrased, "Spare the rod and spoil the child":

Proverbs, 13:24 — "He that spareth his rod hateth his son: but he that loveth him chasteneth him betimes."

Proverbs, 23:13 — "Withhold not correction from the child: for if thou beatest him with the rod, he shall not die."

Proverbs, 23:14 — "Thou shalt beat him with the rod, and shalt deliver his soul from hell."

Proverbs, 29:15 — "The rod and reproof give wisdom: but a child left to himself bringeth his mother to shame."

The decision of the court in this case is predicated upon the record in this case and is in no way concerned with the present so-called "wave of juvenile delinquency". This decision does not mean that a rod is always to be used in the discipline of a child, for reproof or a reprimand at times may display the greater wisdom. When, however, a rod is so used the use must conform to that contemplated by the State statute.

The judgment of conviction should therefore be reversed on the law and the facts and the information dismissed.